# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-946

## STATE IN THE INTEREST OF M.A.N., N.A.N., & E.J.N., JR.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2008-0846
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**724 Moss Street**
**Lake Charles, Louisiana  70601**
**(337) 436-2900**
**Counsel for Appellant:**
    E.N.

**Tricia R. Pierre**
**Attorney at Law**
**600 Jefferson Street, Suite 902**
**Lafayette, Louisiana  70501**
**(337) 456-1653**
**Counsel for Appellees:**
    M.A.N.
    N.A.N.
    E.J.N., Jr.

**Tamara Rahim**
**State, Department of Social Services**
**Brandywine I, Room 218**
**825 Kaliste Saloom**
**Lafayette, Louisiana  70508**
**(337) 262-2250**
**Counsel for Appellee:**
      **State of Louisiana, Department of Social Services**

**Carolyn Cole**
**Fifteenth Judicial District Public Defender's Office**
**600 Jefferson Street, Suite 902**
**Lafayette, Louisiana  70501**
**(337) 232-9345**
**Counsel for Appellant:**
      **J.M.**

**Michelle Breaux**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, Louisiana  70502**
**(337) 232-5170**
**Counsel for Appellee:**
      **State of Louisiana**

**KEATY, Judge.**

On the State's motion and after having conducted termination proceedings for a third time, the trial court terminated the parental rights of the mother, J.M., with respect to her minor son, E.J.N., Jr., and it terminated the parental rights of the father, E.N., with respect to his minor children, M.A.N., N.A.N.,[1] and E.J.N., Jr. by judgment dated June 18, 2012. Both the father and the mother appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

M.A.N., N.A.N., and E.J.N., Jr. came into the custody of the Louisiana Department of Children and Family Services (State) on August 11, 2008, after an oral instanter order was obtained on the grounds of physical abuse. The basis for the removal was that the father had slapped five-month old E.J.N., Jr. in the face leaving marks and that J.M. had slapped two-year old N.A.N. on the leg leaving marks and causing swelling. Both E.N. and J.M. were arrested, and the three children were voluntarily placed with their paternal grandparents. The children were adjudicated children in need of care on October 14, 2008, and a case plan was established which sought permanency through reunification.

On October 29, 2010, the State filed a "Petition to Terminate Parental Rights and Certification for Adoption." The first termination trial took place on January 20, 2011. After hearing testimony, the trial court denied termination as to E.N. and J.M., allowing them six months to continue working on their case plans by obtaining "suitable housing and employment sufficient to care for their six children." The trial court ordered the State to work toward reunification and to increase visitation between E.N. and J.M. and the three children.

_____

[1] D.T. is the mother of M.A.N. and N.A.N. Her parental rights were terminated at the January 20, 2011 termination trial and are not at issue in this appeal.

The State filed a second "Petition to Terminate Parental Rights and Certification for Adoption" on December 5, 2011, asserting that E.N.'s and J.M.'s parental rights should be terminated because they abandoned M.A.N., N.A.N., and E.J.N., Jr. by failing "to provided significant contributions to the children's care and support for any period for six consecutive months." After conducting a pre-trial conference on January 24, 2012, the trial court reset the matter to April 3, 2012. According to the court minutes, the trial court instructed E.N. and J.M. that if they did not wish for the hearing to take place, they should cooperate with the State, provide financial means to take care of their six children, obtain suitable housing for eight people, provide proof of employment, and continue with counseling and anger management. The trial court further directed that visitation should occur twice a month.

The termination petition was tried on May 1, 2012, and the matter was taken under advisement. Written reasons for ruling were signed on May 21, 2012, terminating the parental rights of E.N. and J.M. A "Judgment of Termination of Parental Rights and Certification for Adoption" was signed on June 18, 2012. E.N. and J.M. now appeal, asserting similar assignments of error. First, they contend that the trial court erred in terminating their parental rights. More specifically, they claim that the trial court erred in finding that they had not substantially complied with their case plans and in finding that there was no reasonable expectation for improvement in the near future nor any reasonable expectation that they would complete any new requirements of their case plans as deemed necessary for the safe return of their child(ren). Second, they contend that the trial court erred in finding that termination was in the best interest of the child(ren).

## DISCUSSION

*Law*

We review a trial court's determination as to whether parental rights should be terminated according to the manifest error standard of review. *State ex rel. K.G.*, 02-2886 (La. 3/18/03), 841 So. 2d 759.

> The Supreme Court has stated that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599. This liberty interest is "perhaps the oldest of the fundamental liberty interests." *State ex rel. SNW v. Mitchell*, 01-2128, p. 8 (La.11/28/01), 800 So.2d 809, 814 (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49).

> In termination proceedings, that fundamental interest must be balanced with the interest of the child, and "courts of this state have consistently found the interest of the child to be paramount over that of the parent." *State ex rel. J.M.*, 02-2089, p. 8 (La.1/28/03), 837 So.2d 1247, 1252. Often at odds with those of its parents, the child's interest is "in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care." *Id.* When determining whether a parent's rights should be involuntarily terminated, the trial court must exercise "great care and caution . . . because the permanent termination of the legal relationship existing between children and their biological parents is one of the most severe and drastic actions the State can take against its citizens." *Id.*

> Louisiana Children's Code Article 1015 sets forth eight grounds for termination of parental rights. Although the State need only establish one ground for termination, the trial court must also find that the termination is in the best interest of the child in order to meet the statutory requirement of La.Ch.Code art. 1035(A), which requires that grounds for termination be proven by clear and convincing evidence. *State ex rel. M.H. v. K.W.H.*, 40,332 (La.App. 2 Cir. 9/23/05), 912 So.2d 88.

*State in the Int. of J.K.G.*, 11-908, pp. 5-6 (La.App. 3 Cir. 1/11/12), __ So.3d __, __.

3

*The Case Plans*

The case plans established for E.N. and J.M. remained virtually the same throughout the course of these proceedings and basically required that they: 1) establish safe, adequate, and stable housing; 2) obtain and maintain stable employment and parental contribution; 3) attend and complete counseling and anger management; 4) visit with his/her child(ren); and 5) cooperate and maintain contact with the agency.

*Ruling of the Trial Court*

In its May 21, 2012 Reasons for Ruling, the trial court in the instant case stated:

> Enough is enough! There has to be a period of time when children are entitled to finality. All children should be able to live a life as a child with a chance to be within a family unit. Three years plus 8 months, and three termination hearings, is in this Court's opinion enough. Despite several opportunities to change, the parents have failed to comply with several of the statutory factors contained within La.Ch.Code art. 1036(C). Specifically, the parents have failed to provide this Court with any evidence that they have the means or the intention to provide adequate housing for themselves and their 6 children. The parents have moved on numerous occasions and failed to apprise the Department of their whereabouts. Visitation by the parents with the children has been basically non-existent since August 2011. The parents have not complied with the counseling and anger management requirements of their caseplans.
>
> . . . .
>
> Certainly the record supports a view that the parents' pattern of behavior evidences lack of reasonable expectation of improvement pursuant to Article 1036(D)(3). The parents' pattern of behavior has demonstrated that they are either unable or unwilling to progress in various components of their case plan so as to indicate that they will be able to provide an adequate permanent home for the children.

*Compliance with Case Plans*

Both E.N. and J.M. contend that the trial court erred in finding that they had not substantially complied with their case plans. They contend that the trial court

further erred in concluding that there was no reasonable expectation for further improvement in his/her condition or conduct in the near future.

Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. In the instant matter, the trial court relied on Louisiana Children's Code Articles 1015 and 1036 in deciding to terminate the parental rights of E.N. and J.M. Article 1015 (emphasis added) provides, in pertinent part:

> The grounds for termination of parental rights are:
>
> . . . .
>
> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been **no substantial parental compliance with a case plan for services** which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Louisiana Children's Code Article 1036, entitled "Proof of parental misconduct," provides, in pertinent part:

> C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
>
> (1) The parent's failure to attend court-approved scheduled visitations with the child.
>
> (2) The parent's failure to communicate with the child.
>
> (3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
>
> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
>
> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6)  The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7)  The persistence of conditions that led to removal or similar potentially harmful conditions.

D.  Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

. . . .

(3)  Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

The trial court made the following observations in its May 21, 2012 Reasons for Ruling:

The third termination proceeding was held on May 1, 2012. The foster care worker, Vickey Carrie, testified that since August 11, 2008, the parent[s] moved a total of 12 times.  She further testified that they are currently living with [E.N.'s] parents in a two bedroom trailer.  She stated that the holes in the flooring and the window were replaced with plywood.  She stated that due to an incident of domestic violence between [J.M.] and [E.N.] in 2011, they were required to attend counseling sessions.  She testified that the parents were referred to Resource Management for counseling [on] four separate occasions, but refused services.  She stated that she had no verification of employment before getting a check stub at court on the date of termination.  She also testified that the parents only visited with their children three times from August 2011-March 2012.  From January 2012 to date the parents have visited only one time with these three children.  On March 27, 2012, the parents' other three children were removed from their custody on grounds of neglect.  On April 14, 2012, they did visit with their children, after their other three children had been taken into custody.  The Department had no contact from the parents from January to March 2012.

Both E.N. and J.M. assert that the trial court erred in concluding that they failed to substantially comply with their case plans.  Nevertheless, they both acknowledged that even if the trial court were to deny termination as to M.A.N., N.A.N., and E.J.N., Jr., they could not take their child(ren) home with them that day because of their current living arrangements.  As the testimony bore out, at the time of the third termination hearing, E.N. and J.M. were living in a trailer owned

6

by E.N.'s parents, and the State would not allow the children to live with their paternal grandfather because of domestic violence issues that he had in the past. In fact, Ms. Carrie, the foster care worker, testified that when she visited the trailer in January 2012, the paternal grandfather stated that he did not want J.M. living in his home because of her aggressiveness toward him. Although E.N. and J.M. both testified that E.N.'s parents had agreed to move out of the trailer and into an elderly housing development should E.N. and J.M. regain custody of the three children involved in this proceeding, neither of E.N.'s parents were called to testify to the accuracy of those statements.

The evidence supports a finding that neither E.N. nor J.M. had obtained suitable housing for their family by the date of the termination hearing. We conclude that the trial court did not commit manifest error in concluding that E.N. and J.M. had not substantially complied with their case plans. Moreover, given the history of this matter, we further find that the trial court did not commit manifest error in concluding that there was no reasonable expectation that either E.N. or J.M. would make significant improvement in their conduct in the future.[2]

*Best Interest of the Child(ren)*

E.N. and J.M. contend that the trial court erred in finding that termination was in the best interest of the child(ren). We disagree. In *State ex rel. K.G.*, 841 So.2d at 762, the Louisiana Supreme Court explained:

> The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the

---

[2] Because the jurisprudence requires that the State need only prove one of the grounds for termination listed in La.Ch.Code art. 1015, we do not need to address whether the State proved any other grounds for termination. *See, State in the Int. of J.K.G.,* __ So.3d __.

termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven.

E.J.N., Jr., was just five months old when he was removed from his parents' care. His sisters, M.A.N. and N.A.N., were three and two years old, respectively, when they were removed from the care of E.N. and J.M. At the time of the third termination hearing, the children had been in the foster care system for three years and eight months. Ms. Carrie testified that M.A.N. and N.A.N. had been living in a certified adoptive home in Acadia Parish; both are progressing well in school and have minimal behavioral problems. She explained that in March of 2012, E.J.N., Jr. was fortunate enough to move into the foster home where his two siblings had been living. Ms. Carrie testified that while he did have a few behavioral issues, he was adjusting to his new home and the foster parents were working with him to solve those issues. According to Ms. Carrie, the agency was of the opinion that it was in the best interest of the three children that the parental rights of E.N. and J.M. be terminated.

E.N. and J.M. each admitted that while they did visit their child(ren) a few times after the January 24, 2012 pretrial conference, they did not come close to attending all of the bimonthly visitations as the trial court had directed. They also admitted to not keeping the State informed of their whereabouts on several occasions when they had to change living arrangements, including the time they were evicted from an apartment for nonpayment of rent. More significantly, both E.N. and J.M. acknowledged that, given their current living arrangements, they were not presently able to bring their children home even if the trial court were to

deny the State's attempt to terminate their parental rights. Further, E.N. testified that his child support obligations were "the main problem of why we can't maintain our own home." Finally, and despite being ordered to obtain and maintain stable employment, both E.N. and J.M. did not provide the State with verification of employment until the date of the termination hearing, and then, they each submitted only one check stub.

As the supreme court stated in *State ex rel. K.G.*, 841 So.2d at 762, "[t]he fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing." In the instant case, despite being given much time and many opportunities to comply with their case plains, neither E.N. nor J.M. were able to show that they could consistently provide for the mental, physical, and emotional needs of their children. Accordingly, we conclude that the State met its burden of proving by clear and convincing evidence that termination of E.N.'s and J.M.'s parental rights was in the best interest of M.A.N., N.A.N., and E.J.N., Jr. The trial court did not err in determining that termination was in the best interest of the child(ren).

## DECREE

For the foregoing reasons, the judgment of the trial court terminating the parental rights of J.M., with regard to her son, E.J.N., Jr., and E.N., with regard to his children, M.A.N., N.A.N., and E.J.N., Jr. is affirmed. All costs of this appeal are assessed against J.M. and E.N.

**AFFIRMED.**