## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-428


IN RE: C.E.B. APPLYING

FOR THE ADOPTION OF M.A.D., II


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 6931
HONORABLE LILYNN A. CUTRER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of J. David Painter, James T. Genovese, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


**David C. Hesser**
**Hesser & Flynn, A Limited Liability Partnership**
**2820 Jackson Street**
**Alexandria, Louisiana 71301**
**(318) 542-4102**
**Counsel for Appellant:**
    **L.H. (father)**

**Henry R. Liles**
**Liles & Guillory**
**940 Ryan Street**
**Lake Charles, Louisiana  70601**
**(337) 433-8529**
**Counsel for Appellee:**
        **C.E.B. (stepfather)**

**Leslie Musso**
**Attorney at Law**
**616 W. Sallier**
**Lake Charles, Louisiana  70601**
**(337) 794-4209**
**Counsel for Appellee:**
        **M.A.D., II (child)**

**KEATY, Judge.**

Biological father appeals a judgment terminating his parental rights to his biological son. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

On October 26, 2009, T.D.[2] was artificially inseminated with the sperm of L.H., a man with whom she had had an on-again/off-again sexual relationship since 2005.[3] T.D. gave birth to a son, M.A.D., II, on July 15, 2010. Prior to M.A.D.'s birth, T.D. began dating, and eventually living with, C.E.B. T.D. and C.E.B. were married on March 6, 2013, and soon afterward, C.E.B. filed a Petition for Stepparent Adoption in the Fourteenth Judicial District Court, Parish of Calcasieu (14th JDC), seeking to adopt M.A.D. In the petition, C.E.B. alleged that:

> [L.H.] is the biological father of the child, but has never acknowledged the child, is not on the child's birth certificate as the father, and has failed to support the child, failed to visit the child, failed to communicate, or attempt to communicate with the child since his birth without just cause. Therefore, his consent may be dispensed with in accordance with the provisions of Ch.C. Art. 1245.

L.H. responded to the petition by filing numerous exceptions, including that of no cause of action, no right of action, and prematurity, coupled with an answer/opposition to intrafamily adoption, a motion to appoint an attorney for the

---

[1] Many of the "facts" recited herein are taken from the trial court's Written Reasons for Judgment which were signed and, by separate Judgment rendered that day, "made judgment of the Court" on December 9, 2013. We have omitted some facts and procedural history that is not relevant to our resolution of this appeal.

[2] Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding.

[3] L.H. had previously undergone a vasectomy and had stored his sperm at the West Houston Fertility Center in 2002.

minor child in accordance with La.Ch.Code art. 1244.1(B),[4] and a request to stay the proceedings until the conclusion of Texas proceedings.[5] Following a hearing on September 4, 2013,[6] the trial court denied L.H.'s exceptions of no right of action, no cause of action, and prematurity.[7] The trial court also denied L.H.'s request for a stay.

In the meantime, on May 15, 2013, L.H. filed a Petition to Establish Paternity in a separate proceeding in the 14th JDC.[8] He later filed a supplemental and amending petition and rule for custody and visitation. On May 17, 2013, the trial court ordered paternity testing, the results of which confirmed that L.H. was M.A.D.'s biological father.

---

[4] Although the record does not contain a disposition for L.H.'s motion to appoint an attorney for M.A.D., court minutes dated September 16, 2013, indicate that an attorney appeared at a hearing that day as curator for M.A.D.

[5] On October 25, 2011, L.H. and K.L. filed suit in the 55th Judicial District in Harris County, Texas, against Leah Schenk, M.D., Obstetrical & Gynecological Associates, PLLC, FemPartners, Inc., Fertility Specialists of Houston, PLLC, Texas Andrology Services, LLC, and T.D., seeking damages because T.D. was allegedly inseminated with L.H.'s sperm without his or K.L.'s consent.

[6] The minutes and the transcript regarding the exception hearing state that it took place on September 16, 2013. While this discrepancy is noted, the actual date that the exception hearing took place is of no moment to the resolution of this appeal.

[7] Although the judgment on L.H.'s exceptions does not address the disposition of his exception of prematurity, the trial court clearly stated that it was denying that exception in the hearing transcript.

[8] It does not appear from the record that L.H.'s Petition to Establish Paternity was consolidated with this matter in the trial court. According to L.H.'s appellate brief, however, "[t]he custody matter was set up in a civil docket before the same Judge pursuant to the one family one judge local rule." We take judicial notice that Section B of Rule 4 of the 14th JDC, concerning the allotment of cases, provides that "[a]ll cases involving the same family units shall be allotted to the same division of the Court." We further take judicial notice that the Written Reasons for Judgment indicate that the same district judge was assigned to both matters. The pleadings from L.H.'s suit have not been made part of this record on appeal.

2

The trial of L.H.'s opposition to C.E.B.'s adoption of M.A.D. took place on September 25[9] and October 9, 2013. At the start of the trial, the trial court and the parties agreed the entire record, including the transcript from the exceptions hearing, would be received into evidence as Joint 1. In Written Reasons for Judgment dated December 9, 2013, the trial court found that L.H. "failed to establish his parental rights"; and, thus, it terminated L.H.'s parental rights to M.A.D. L.H. now appeals, asserting that the trial court erred: 1) in terminating his parental rights; 2) in denying his dilatory exception of prematurity;[10] and 3) in applying the Louisiana Children's Code to terminate his parental rights in a manner that is in violation of the United States Constitution and the Louisiana Constitution.

## DISCUSSION

### Standard of Review

"We review a trial court's determination as to whether parental rights should be terminated according to the manifest error standard of review." *State in Interest of M.A.N.*, 12-946, p. 3 (La.App. 3 Cir. 12/28/12), 106 So.3d 288, 290-91. "Pursuant to the well-settled manifest error standard of review, '[s]ubstantial commitment and parental fitness are factual findings that are entitled to deference unless the trial court is clearly wrong.' *In re Adoption of J.L.G.,* [01-269, p. 10 (La.App. 1 Cir. 2/21/01),] 808 So.2d [491,] 498." *Doe v. A.B.*, 06-1226, p. 5 (La.App. 3 Cir. 1/31/07), 949 So.2d 602, 605.

---

[9] While the Written Reasons for Judgment list the first trial date as September 24, 2013, the date of the transcript is September 25, 2013.

[10] L.H. also alleged that the trial court erred in denying his peremptory exception of no cause of action. Because he failed to brief this assignment of error, we consider it abandoned. *See* Uniform Rules—Court of Appeal Rule 2–12.4(B)(4).

*Law*

Louisiana Children's Code Article 1247(B) provides:

> If the adoption petition names an alleged or adjudicated father and his parental rights have not been terminated by a court of competent jurisdiction, he shall be served with notice of the filing of the petition in accordance with Articles 1133, 1134, and 1136 and thereafter, his rights shall be determined in accordance with the provisions of Articles 1137 through 1143.

Thereafter, La.Ch.Code art. 1138, entitled "Hearing of opposition to adoption; establishment of parental rights," provides:

> A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.
>
> B. Proof of the father's substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother's pregnancy or the child's birth, that he either:
>
> (1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child.
>
> (2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
>
> C. The child, the mother of the child, and the legal custodian may offer rebuttal evidence limited to the issues enumerated in Paragraphs A and B of this Article. However, the primary consideration shall be, and the court shall accept evidence concerning, the best interests of the child.
>
> D. If the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are terminated.

E. If the court finds that the alleged or adjudicated father has established his parental rights, the court shall declare that no adoption may be granted without his consent. The court may also order the alleged or adjudicated father to reimburse the department, or the licensed private adoption agency, or other agency, or whoever has assumed liability for such costs, all or part of the medical expenses incurred for the mother and the child in connection with the birth of the child.

### Denial of Layne's Exception of Prematurity

The dilatory exception of prematurity asks whether the cause of action has matured such that it is ripe for judicial determination. La.Code Civ.P. art. 926, *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-0451 (La.12/1/04), 888 So.2d 782. An exception of prematurity merely slows down the progress of the action, but does not usually defeat it. La.Code Civ.P. art. 423. We review a trial court's denial of an exception of prematurity under the manifest error standard. *Pinegar v. Harris*, 08-1112 (La.App. 1 Cir. 6/12/09), 20 So.3d 1081.

*Granger v. Granger*, 11-77, pp. 3-4 (La.App. 3 Cir. 6/15/11), 69 So.3d 666, 669, *writ denied,* 11-1882 (La. 9/16/11), 69 So.3d 1152.

L.H. contends that given the "unusual fact pattern of this case," the trial court erred in denying his exception of prematurity and terminating his parental rights before his paternity of M.A.D. was established and without giving him a reasonable period of time to assert his parental rights after M.A.D.'s paternity was conclusively established.

C.E.B. counters that the intrafamily adoption statutes do not require that an alleged father's parental rights be terminated before an adoption petition can be filed. Instead, those statutes require that the alleged father be served with notice that the adoption petition has been filed, and, if he opposes the adoption, the court must determine whether he established his parental rights. *See* La.Ch.Code arts. 1138 and 1247. Thereafter, "[i]f the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are

terminated." La.Ch.Code art. 1138(D). C.E.B. submits that L.H.'s parental rights were properly terminated in this matter because he knew that T.D. had been inseminated with his sperm since very early in her pregnancy, yet he did nothing to obtain a judgment of paternity in the three years prior to this adoption proceeding being filed.

In *Suttle v. Easter*, 45,236 (La.App. 2 Cir. 12/10/09), 26 So.3d 1001, *writ denied,* 09-2826 (La. 1/19/10), 25 So.3d 128, the stepfather of a toddler filed a petition for her private adoption after the death of his wife who was the child's mother. After receiving proper notice of the proceeding, the child's alleged biological father's request for DNA testing was granted, and it was determined that there was a 99.9% probability that he was the girl's father. Following trial of the biological father's opposition to the adoption, the trial court found that "[b]ecause of [the mother]'s actions in informing [the biological father] of his paternity before and after the child's birth, . . . [the biological father] 'knew at a very early stage that there was a significant possibility that [he] had fathered a child.'" *Id.* at 1004. (Fifth alteration in original.) Thus, the trial court terminated the biological father's parental rights and certified the girl for adoption "because he failed to establish a substantial commitment to his parental responsibility as required by La. Ch.C. art. 1138." *Id.*

At trial, L.H. claimed that he made reasonable attempts to manifest his parental commitment to M.A.D., i.e., that he was willing to visit and financially support M.A.D., but his efforts were thwarted by T.D. After hearing testimony and reviewing the exhibits submitted by the parties, however, the trial court found that the evidence did not support L.H.'s claim. Specifically, the trial court found that L.H. and his family knew "that there was a significant possibility that he was

[M.A.D.'s] father" since the beginning of T.D.'s pregnancy, yet there were only two occasions when he indicated that he wanted to see the child, once when T.D. was about three months pregnant and a second time when M.A.D. was less than seven months old. Thereafter, when T.D. told him that he would have to get a court order to be able to visit with M.A.D., L.H. never took any steps to do so, even though he testified that he had done paternity testing on two of his other illegitimate sons and had filed a filiation suit regarding his oldest child. In addition, the trial court found that there was no evidence to show that L.H. ever offered to provide any financial support to T.D. while she was pregnant with or after the birth of M.A.D. Given the totality of the evidence, we find no manifest error in the trial court's denial of L.H.'s exception of prematurity. *See* La.Ch.Code arts. 1138 and 1247; *Suttle*, 26 So.3d 1001.

### *Termination of L.H.'s Parental Rights and Applicability of the Children's Code*

In its December 9, 2013 reasons for judgment, after citing La.Ch.Code arts. 1247 and 1138, the trial court stated that "[L.H.] had the burden of establishing his parental rights by (1) acknowledging that he is the father of [M.A.D.]; (2) proving that he has manifested a substantial commitment to his parental responsibility; and (3) proving he is a fit parent of his child." Thereafter, the trial court found as follows:

> [L.H.] did not prove that he made reasonable attempts to visit with [M.A.D.] that were thwarted by T.D. He made one inquiry about visiting with [M.A.D.] that T.D. was aware of while she was pregnant and she responded that she wanted court papers before he visited. Other than an e-mail that [L.H.] maintained he sent to an e-mail address that T.D. no longer used, there was absolutely no attempts by [L.H.] to visit with [M.A.D.]
>
> This Court does not take lightly the decision of whether to terminate a parent's rights to their child. However, [L.H.] clearly did not prove he was willing to provide support and to visit [M.A.D.] and

7

that he made reasonable attempts to manifest such a parental commitment but was thwarted in his efforts by T.D. Thus, the Court does not reach the additional inquiries of whether he has proven that he is a fit parent and is now willing and able to assume legal and physical care of [M.A.D.]

L.H. contends that the trial court erred in terminating his parental rights pursuant to La.Ch.Code art. 1138 where the petition for adoption only pled that an adoption be granted pursuant to La.Ch.Code art. 1245 and where he objected to expansion of the pleadings at trial. He claims that since he did not participate in or authorize the conception of M.A.D., he should not have been required to visit with M.A.D. before his paternity had been determined and/or before he had obtained court-ordered visitation. In addition, L.H. claims that he repeatedly requested visitation, but those requests were thwarted by T.D.

In opposition, C.E.B. relies on La.Ch.Code art. 1168, which provides that "[e]xcept as otherwise specified in this Title,[11] all provisions of the Children's Code remain applicable." Accordingly, he contends that the trial court was required to apply all the relevant provisions of the Louisiana Children's Code when determining whether to allow him to adopt M.A.D. C.E.B. further points out that there is no requirement in La.Ch.Code art. 1138 that support or visitation be court ordered before a father must prove that he "manifested a substantial commitment to his parental responsibility." La.Ch.Code art. 1138. C.E.B. submits that the evidence proved that L.H. knew he was M.A.D.'s biological father since at least December 20, 2009, i.e., very early in T.D.'s pregnancy, because he admitted under oath that he had called the fertility clinic and was informed that T.D. had been inseminated with his sperm. Moreover, trial testimony confirmed that L.H.

---

[11] Louisiana Children's Code Article 1168 is located in Title XII, entitled "Adoption of Children."

had three other illegitimate children, and L.H. testified that he knew how to and had actually obtained DNA testing that confirmed his paternity of those three children. Finally, C.E.B. submits that the evidence belied L.H.'s contention that he made repeated requests for visitation with M.A.D. that were thwarted by T.D.

In *Doe v. A.B.*, 949 So.2d 602, the prospective adoptive parents of Baby D appealed a trial court judgment that upheld the objection of Baby D's biological father to the adoption and ordered that the adoption could not go forward without his consent. Before beginning our review of the trial court record and findings of fact, we confirmed that La.Ch.Code art. 1138 applied to the matter and that the biological father had the burden of "prov[ing] a substantial commitment to his parental responsibilities and that he is a fit parent of his child." *Doe v. A.B.*, 949 So.2d at 604.

The plain language of La.Ch.Code art. 1247(B) dictates that the alleged father's "rights *shall be determined* in accordance with the provisions of Articles 1137 through 1143." (Emphasis added.) Since La.Ch.Code art. 1138 is located within that statutorily mandated range of code articles, we conclude that the trial court did not err in applying it to this matter.

In *Doe*, 949 So.2d 602, after reviewing the evidence presented at the hearing on the biological father's opposition to adoption, we concluded that it did not support a finding that the father had exhibited a substantial commitment to Baby D. Instead, the evidence showed that he made no effort to determine whether he was the father after learning that the mother was pregnant and that even the mother filed, and he was served with, a Notice of Intent to Surrender Baby D for adoption, he failed to visit the child or pay for any of his expenses. In addition, the evidence showed that the father was not fit to parent Baby B given that he had quit school in

the fourth grade, he had a poor work history, and he had not proven that he would be able to provide financial support and a suitable home for Baby D. Thus, we concluded that the trial court committed manifest error in finding that the mother had thwarted the father's attempts to manifest a substantial commitment to Baby D and in finding that the father had met his burden of proof. *Doe v. A.B.*, 949 So.2d 602.

After a thorough review of the testimony and evidence, we find no manifest error in the trial court's decision to terminate L.H.'s parental rights to M.A.D. based on L.H.'s failure to prove that "he was willing to provide support and to visit [M.A.D.] and that he made reasonable attempts to manifest such a parental commitment but was thwarted in his efforts by [T.D.]"

## DECREE

For the forgoing reasons, the judgment of the trial court terminating L.H.'s parental rights to his biological son, M.A.D., II, is affirmed. All costs of this proceeding are assessed to L.H.

**AFFIRMED.**