NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

JAC 18-443

STATE IN THE INTEREST OF

J.T.B., ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 30993
HONORABLE LILYNN ANNETTE CUTRER, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Phyllis M. Keaty, and Van H. Kyzar, Judges.

**AFFIRMED.**

**Nicholas Pizzolatto, Jr.**
**State of Louisiana, Children and Family Services**
**1919 Kirkman Street**
**Lake Charles, LA 70601**
**(337) 491-2066**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**James Wade Smith**
**P. O. Box 1706**
**Lake Charles, LA 70602**
**(337) 436-8424**
**COUNSEL FOR APPELLANT:**
     **L. N. B. -  Mother**

**Edward M. Nichols, Jr.**
**827 Pujo St.**
**Lake Charles, LA 70601**
**(337) 439-8587**
**COUNSEL FOR APPELLEE:**
     **R. C.**

**Mike K. Stratton**
**Public Defender's Office**
**1032 Ryan St.**
**Lake Charles, LA 70601**
**(337) 436-1758**
**COUNSEL FOR APPELLEES:**
     **B. D.**
     **R. J.**

**Lacey Bodley**
**Children's Advocacy Program**
**1 Lakeshore Dr, Ste. 1585**
**Lake Charles, LA 70601**
**(337) 491-2461**
**COUNSEL FOR APPELLEES:**
     **L. A. B.**
     **L. L. B.**
     **L. N. D.**
     **J. A. B.**
     **J. T. B.**
     **L. I. B.**

**Lachasity Bernard**
**In Proper Person**
**1302 Jordan Street**
**New Iberia, LA 70560**
**(337) 739-4210**

**EZELL, Judge.**

In this matter, L.N.B. (hereinafter "the Mother") appeals the decision of the trial court terminating her parental rights to her six children, L.A.B., L.I.B., L.L.B., L.N.D., J.A.B., and J.T.B., and certifying the children as free and available for adoption.[1] For the following reasons, we hereby affirm the decision of the trial court.

On June 15, 2016, the Department of Children and Family Services (DCFS) received a call that the Mother was unable to care for the children, as she was passed out due to synthetic marijuana use. DCFS went to the home and found a house that was unfit for children to live in. The home was filled with roaches, devoid of food, trash was scattered throughout the house, and there were no beds for the children. The house was hot due to a lack of air conditioning. DCFS transported the Mother to the grocery store to buy food, purchased two toddler beds, two pack-and-play beds, and a window air conditioner. A safety plan was put in place that day stating that the Mother would refrain from drug use while caring for the children, would ensure the home was adequate for children to live in, and that she would make sure they were properly supervised.

On June 28, 2016, DCFS received an additional report that the Mother was again using synthetic marijuana, that she was being evicted, and that the children were again unsupervised. When DCFS arrived at the home, the Mother was incoherent and unable to answer any questions. The home was again in disarray with trash and food on the floor. The children were dirty and several of them reeked of urine. Once again, there was little to no edible food in the house. One of

---

[1] The parental rights of the fathers of the children were also terminated, but they do not appeal that decision, rendering that judgment final as to them.

the toddler beds and both pack-and-plays DCFS had purchased were torn up or destroyed. While the window air conditioner had been put up, it was not running and the house was hot.

DCFS filed for an instanter order that day and removed the children from the home. A case plan was developed for the Mother in order for her to reconcile with the children. The Mother was to find stable housing, was to refrain from drug use, to find employment, to attend anger management classes, and to provide $25 per month support per child while the children were in the care of the DCFS, among other things. After the children were in the care of DCFS for roughly twenty months, DCFS moved to terminate the Mother's parental rights. After a hearing on the matter, the trial court found that the Mother had not complied with the case plan and that the children had been in the custody of the DCFS for over eighteen months. Accordingly, the trial court terminated the Mother's parental rights under La.Ch.Code art. 1015(5)(b) and (c), as well as La.Ch.Code art. 1015(6). From that decision, the Mother appeals.

On appeal, the Mother comes before this court in a pro se manner. She does not assert any assignments of error, but makes a general and moving appeal for the return of her children. This appeal comes not in a brief, but in a letter. Because the Mother is currently a pro se litigant who lacks formal training in the law and its rules of procedure, out of an abundance of caution and considering the delicate nature of these proceedings, we will treat her letter as asserting a general assignment of error that the trial court was incorrect in terminating her parental rights. We will review the record as if that assignment of error was properly alleged. *See Bernard v. Lafayette City–Parish Consol. Gov't.*, 11-816 (La.App. 3 Cir. 12/7/11), 80 So.3d 665.

In *State in the Interest of J.A.*, 99-2905, pp. 7-8 (La. 1/12/00), 752 So.2d 806, 810-811(citations omitted), the supreme court stated:

> In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.

"We review a trial court's determination as to whether parental rights should be terminated according to the manifest error standard of review." *State in Interest of M.A.N.*, 12-946, p. 3 (La.App. 3 Cir. 12/28/12), 106 So.3d 288, 290-91.

> Louisiana Children's Code Article 1015 sets forth eight grounds for termination of parental rights. Although the State need only establish one ground for termination, the trial court must also find that the termination is in the best interest of the child in order to meet the statutory requirement of La.Ch.Code art. 1035(A), which requires that grounds for termination be proven by clear and convincing evidence.

*State in the Interest of J.K.G. and J.L.G.*, 11-908, pp. 5–6 (La.App. 3 Cir. 1/11/12), 118 So.3d 10, 14–15.

In the instant case, the State sought termination of the Mother's parental rights based on La.Ch.Code art. 1015(5)(b) and (c), as well as La.Ch.Code art. 1015(6). Those articles list grounds for termination of parental rights as including:

> (5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> . . . .

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

(6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Reviewing the record before this court, we can find no error in the trial court's ruling. The record shows that nearly twenty months had passed between the time the children were removed from the Mother's care and the trial on this matter. The Mother failed to substantially comply with her case plan.

While the Mother testified she had started working just prior to trial, she had not maintained steady employment during the prior year-and-a-half. She still had no housing of her own, and moved frequently enough that DCFS could not visit her at any home to inspect the house. DCFS was unable to reach her throughout the twenty months over the phone. Although she alleges she sought drug treatment, the Mother has never provided DCFS with proof of this treatment or signed any releases so that DCFS could investigate her claims on its own. Furthermore, the Mother failed one drug test, testing positive for cocaine. Her admitted drug of choice, synthetic marijuana, would not have shown up on drug screens.

The Mother frequently missed visitation with the children and, according to the testimony of the CASA workers supervising those visits, she seemed mostly uninterested in the children, giving them her phone, rather than interacting with

them in the limited time she could see them. Furthermore, there is no evidence that the Mother paid any support to DCFS in accordance with her case plan. While the Mother alleges she has "paid" support to DCFS via the seizure of a tax return, she offered no proof, the DCFS has no record of the alleged payment at all, and worse, the Mother blatantly admitted to receiving any such refund via obvious tax fraud. She claims she received a sizable tax refund by claiming her children for a year in which they were entirely in the custody of DCFS and by claiming other family members who did not live with her. Even if the illegal refund had actually been seized, the Mother still went over eighteen months without paying support prior to the alleged seizure, as noted by the trial court. Finally, the Mother admits she did not attend anger management counseling as required by the case plan.

It is clear from the record before this court that the Mother did not substantially comply with her case plan and termination of her parental rights is in the best interests of the children. As noted by the trial court, the Mother may want her children back, but over the course of twenty months she failed to do the things required to have them returned to her care. We can find no error in the ruling of the trial court below.

For the above reasons, the decision of the trial court is affirmed. Costs of this appeal are hereby assessed against the Mother.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.